# EXHIBIT B

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 2 of 16 PageID #: 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| PINCUS LAW GROUP, PLLC, | |
| Plaintiff, | Index No.: _____ |
| -against- | |
| MAJENICA LYNN SPRINGER and MJ CONNECTIONS, INC., | **VERIFIED COMPLAINT** |
| Defendants. | |

Pincus Law Group, PLLC ("Pincus"), by its attorneys, Nixon Peabody LLP, as and for its Verified Complaint against Defendants Majenica Lynn Springer ("Majenica") and MJ Connections, Inc. ("MJ Connections") (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.      This action involves Pincus, a law firm which provides default related creditor's rights services.  Pincus and MJ Connections entered into a contract (the "Contract") on November 28, 2017, whereby Defendants agreed to provide exclusive services to Pincus in the State of New York.  Instead, Defendants repeatedly breached the Contract's exclusivity provision by providing services to other clients in the State of New York and diverting business away from Pincus toward these other clients.  As a result, Pincus terminated the Contract on October 29, 2019.  Pincus now seeks damages from Defendants for the lost revenue caused by Defendants' work for other clients in the State of New York and the improper diversion of business from Pincus.

## PARTIES

2.      Plaintiff Pincus is a domestic professional service limited liability company, organized and existing under the laws of the State of New York, with its principal place of business located at 425 RXR Plaza, Uniondale, New York, 11556.

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 3 of 16 PageID #: 12

3.     Upon information and belief, Defendant Majenica Lynn Springer is a resident of the State of Texas.

4.     Upon information and belief, Defendant MJ Connections, Inc. is a Texas corporation, organized and existing under the laws of the State of Texas, with a principal place of business at 1907 McMillan Avenue, Dallas, Texas 75206.

5.     Although MJ Connections is not registered to do business in the State of New York, upon information and belief, MJ Connections regularly conducts business in the State of New York, including but not limited to providing services to Pincus and other clients in the State of New York.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over Defendants pursuant to Civil Practice Law and Rules ("CPLR") §§ 301 and 302 because the acts complained of herein occurred in the State of New York.

7.     Venue is proper in this Court pursuant to CPLR § 503(a) because Pincus's principal place of business is located in Nassau County.

## FACTUAL BACKGROUND

8.     On November 28, 2017, Pincus and Defendants executed the Contract.  Annexed hereto as Exhibit A is a true and correct copy of the Contract.

9.     The Contract required Defendants to provide exclusive business development consulting services to Pincus in the State of New York, including but not limited to, the development of new business for Pincus and providing advice to Pincus on strategic business plans.  See Ex. A at 1.

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 4 of 16 PageID #: 13

10.     The Contract represented the Parties' entire agreement and could only be modified by a written instrument signed by both Parties.  See Ex. A at 3.

11.     The Contract was executed on November 28, 2017 and was terminated on October 29, 2019.  See Ex. A at 1.

Prohibited Clients

12.     The Contract and its Addendum prohibited MJ Connections from marketing to certain pre-existing and prospective clients of Pincus, including Shellpoint ("SMS"), Select Portfolio Solutions ("SPS"), and Champion Mortgage.  See Ex. A at 2, 4.

13.     During the course of the Contract, Defendants began marketing directly to SMS, breaching the Contract.

Exclusive Services

14.     The Contract also required Defendants to provide exclusive services to Pincus in the State of New York.  See Ex. A at 2.

15.     Upon information and belief, notwithstanding the Contract's exclusivity provision, MJ Connections provided services to various law firms in the State of New York, including Hill Wallack, a competing law firm.

16.     Upon information and belief, MJ Connections diverted SMS work, originally intended to Pincus, toward Hill Wallack, essentially eliminating all referral work from SMS to Pincus.

17.     Upon information and belief, Majenica has also encouraged clients to stop referring work to Pincus.

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 5 of 16 PageID #: 14

### Deterioration of the Business Relationship

18.     The business relationship between Pincus and Defendants continued to deteriorate.

19.     Because Defendants repeatedly breached the Contract, including but not limited to diverting work toward other clients in the State of New York, Pincus terminated the Contract on October 29, 2019.

20.     After terminating the Contract, Pincus conducted a final accounting and reconciliation, paying the full balance owed to Defendants.

21.     Subsequently, Majenica left a voicemail for Pincus, threatening the existing and potential economic relationships between Pincus and certain clients.

### Disparaging Comments

22.     The Contract required Pincus and MJ Connections to avoid making any disparaging comments against the other party.  See Ex. A at 2.

23.     Upon information and belief, Majenica repeatedly made disparaging comments about Pincus after the Contract was terminated on October 29, 2019.

24.     Upon information and belief, Majenica recommended a client, who was at that point in time a client of Pincus, stop referring work to Pincus.

25.     Upon information and belief, the same Pincus client subsequently terminated all referral work to Pincus.

26.     Upon information and belief, in August of 2022, Majenica incorrectly informed an employee of Champion Mortgage, a prohibited client included on the Addendum to the Contract, that Defendants had not been compensated for their services.

4

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 6 of 16 PageID #: 15

### AS AND FOR A FIRST CLAIM FOR
### TORTIOUS INTERFERENCE WITH CONTRACT

27.     Pincus repeats, reiterates, and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "26" as if set forth fully herein.

28.     Upon information and belief, Defendants have willfully and maliciously interfered with existing and potential economic relationships between Pincus and its clients, with the intent to undermine Pincus's business.

29.     Upon information and belief, Defendants have solicited, intend to solicit, and continue to solicit certain clients to divert business away from Pincus.

30.     Upon information and belief, certain of Pincus's clients have stopped referring work to Pincus because of Defendants' wrongful and unjustified conduct.

31.     Among other things, the wrongful means deployed by Defendants include: (i) interfering with the work relationship between SMS and Pincus; (ii) diverting work from Pincus toward Hill Wallack, (iii) making disparaging comments about Pincus following termination of the Contract; and (iv) recommending prospective clients and employees, including other marketing firms, to avoid working with Pincus.

32.     Upon information and belief, Defendants' interference with Pincus's business relationships with certain clients was actuated by malice and with the intent to harm Pincus's business.

33.     As a direct and proximate cause of Defendants' actions, Pincus has been damaged and continues to suffer irreparable harm as a result of Defendants' willful interference with Pincus's business relationships.

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 7 of 16 PageID #: 16

34.     Such harm cannot be adequately redressed at law, and Pincus will continue to suffer irreparable harm unless Defendants are enjoined from continued acts of tortious interference.

35.     By reason of the foregoing, Pincus seeks monetary damages caused by Defendants' culpable conduct and injunctive relief preventing MJ Connections from continuing to engage in its unlawful practices.

36.     As a result of Defendants' breach of the Contract, Pincus has been damaged in an amount not less than $400,000.00.

**AS AND FOR A SECOND CLAIM FOR**
**<u>BREACH OF CONTRACT – PROHIBITED CLIENTS</u>**

37.     Pincus repeats, reiterates, and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "36" as if set forth fully herein.

38.     The Contract is a valid and binding agreement between Pincus and Defendants.

39.     Section 3 of the Contract provides

> PINCUS will provide an initial list of prohibited clients and prospects.  MJ will not intentionally market to those clients without specific approval from PINCUS.  (Addendum Attached).

Contract at 2.

40.     The Contract prohibited Defendants from marketing to SMS.

41.     Defendants, however, repeatedly breached the Contract by intentionally marketing to SMS.

42.     Because of Defendants' repeated breaches of the Contract, Pincus has been damaged in an amount to be determined at trial.

6

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 8 of 16 PageID #: 17

### AND FOR A THIRD CLAIM FOR
### BREACH OF CONTRACT – EXCLUSIVE SERVICES

43.     Pincus repeats, reiterates, and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "42" as if set forth fully herein.

44.     The Contract is valid and binding agreement between Pincus and Defendants.

45.     Pursuant to Section 3 of the Contract,

> MJ [Connections] will provide exclusive marketing for PINCUS in the State of New York.  MJ will provide non-exclusive services in PINCUS'S other states.  For the purposes of this Agreement, "exclusive" means that MJ [Connections] shall not provide Services or represent any other law firm in the state of New York.  This does not mean that MJ cannot market with other firms in said state, but means that MJ will not represent any other firm in said state.  PIPNCUS will receive all event information in the same manner as all other MJ Connections' firms/clients and will have the opportunity and notice to attend these events.

46.     Defendants provided services to other law firms in the State of New York, intentionally breaching the exclusivity provision of the Contract.

47.     As a result of Defendants' breaches of the Contract, Pincus has been damaged in an amount to be determined at trial.

### AS AND FOR A FOURTH CLAIM FOR
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

48.     Pincus repeats, reiterates, and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "47" as if set forth fully herein.

49.     Pincus and Defendants were parties to the Contract, the terms of which implied a covenant of good faith and fair dealing.

50.     Defendants executed the Contract with no intent to comply with any of the terms thereof, as evidenced by the ongoing breaches of Contract, including but not limited to the exclusivity and non-disparagement provisions.

7

51.     Defendants failed to exercise good faith and to deal fairly with Pincus in fulfilling the terms and promises contemplated by the Contract and, instead, exercised bad faith and actions designed to damage Pincus.

52.     Defendants' deliberate conduct resulted in simultaneous financial gain to Defendants and deprivation of any benefit to Pincus.

53.     Thus, Defendants have breached the covenant of good faith and fair dealing in the Contract.

54.     Because of Defendants' breach of the covenant of good faith and fair dealing, Pincus has been damaged in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

55.     Pursuant to CPLR § 4101, Pincus demands a jury trial for all claims and issues so triable.

## PRAYER FOR RELIEF

56.     **WHEREFORE**, Pincus prays for judgment in its favor and against Defendants as follows:

1. For compensatory damages in an amount not less than $400,000.00.

2. For restitution in an amount to be determined at trial.

3. For preliminary and permanent injunctive relief against Defendants enjoining them from interfering with Pincus's current and prospective clients.

4. For punitive and exemplary damages.

5. For Pincus's costs incurred in connection with this action, including reasonable attorneys' fees.

6. For pre- and post-judgment costs as permitted by law.

7. For such other relief as the Court deems just and proper.

Dated: June 14, 2023
Melville, New York

**NIXON PEABODY LLP**

By:   */s/ Vincent D. Nguyen*
      Joseph J. Ortego
      Vincent D. Nguyen
      275 Broadhollow Road, Suite 300
      Melville, New York, 11747
      Telephone: (516) 832-7500
      Facsimile: (866) 947-207
      jortego@nixonpeabody.com
      vnguyen@nixonpeabody.com

      *Attorneys for Plaintiff*
      *Pincus Law Group, PLLC*

9

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 11 of 16 PageID #: 20

## VERIFICATION

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF NASSAU    )

       **Caryn Pincus**, being duly sworn, deposes and says as follows:

       I am the Owner of Pincus Law Group, PLLC, the Plaintiff in the above-entitled action, and as such, I am authorized to act on behalf of Plaintiff.

       I have read the foregoing **Verified Complaint** and it is true to the best of my knowledge, except as to matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

                                      Caryn Pincus

Sworn to before me this
14th day of June, 2023

Notary Public

MARGARET BURKE TARAB
Notary Public, State of New York
Registration #02BU6326679
Qualified In Nassau County
Commission Expires June 22, 2023

Case 2:23-cv-05528   Document 1-2   Filed 07/20/23   Page 12 of 16 PageID #: 21

# EXHIBIT A

# MJ CONNECTIONS LIMITED BUSINESS DEVELOPMENT AGREEMENT

This Limited Business Development Agreement ("Agreement") is made this <u>28th day of November 2017</u>, by and between <u>PINCUS LAW GROUP, PLLC</u> (hereinafter referred to as "PINCUS"), and <u>MJ CONNECTIONS, INC.</u> (hereinafter referred to as "MJ"), (together, the "Parties").

WHEREAS, MJ is engaged in the business of consulting in the legal services industry; and

WHEREAS, PINCUS desires to engage the services of MJ to provide advice, assistance and consultation with respect to business development needs for PINCUS's firm; and

WHEREAS, MJ consultants have experience and expertise and desire to render such services;

NOW, THEREFORE, in consideration of the mutual promises exchanged herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.    **Term.**  Subject to the terms and provisions of the Agreement, PINCUS hereby engages MJ as a business development consulting company, and MJ hereby accepts such engagement until either party terminates this Agreement by giving sixty (60) days written notice to the other party.

2.    **Services.**  During the term of this Agreement, MJ agrees to provide business development consulting services to PINCUS.  Such services will consist of assistance with developing new business, developing and advising the client on a strategic business plan, and assisting with further developing relationships with existing clients (the "Services").  MJ's services will be provided remotely.  MJ agrees to perform the Services in accordance with all applicable federal, state and local laws, rules and regulations.  MJ agrees to perform the Services in accordance with generally accepted standards of MJ's profession or trade.

3.    **Remuneration**.  In consideration for the Services MJ will provide to PINCUS, PINCUS shall pay **10% of the amount billed to the Client/Servicer on all new referrals (for any state) directed to PINCUS by MJ at each milestone as the Servicer remits payment.  PINCUS agrees to pay MJ within thirty (30) days of receiving said disbursement.**  In the event this contract is terminated for any reason, PINCUS agrees to continue to pay this 10% fee on any monies received in conjunction with business secured by MJ during the contract period, for a period of three (3) years from the termination of the contract.  If PINCUS receives payment for services rendered during those 3 years, after the 3-year period expires, PINCUS will still disburse those monies to MJ within thirty (30) days of receiving said payment.

*on existing files upon termination*

PINCUS will provide this 10% payment along with a monthly accounting of referrals billed to each Servicer and payments received from each Servicer for referrals received in the prior month, including Servicer name, file name, internal file number, referral date, and billing amount by the 15th of the following month.  PINCUS will work with MJ to reconcile payments received on referrals secured by MJ on a monthly basis.  MJ will then provide PINCUS with an invoice.  MJ's invoice is due and payable within thirty (30) days of PINCUS's receipt of each invoice.

INDEX NO. 609377/2023
RECEIVED NYSCEF: 06/13/2023

Case 2:23-cv-05528  Document 1-2  Filed 07/20/23  Page 14 of 16 PageID #: 23

MJ will provide exclusive marketing for PINCUS in the state of New York. MJ will provide non-exclusive services in PINCUS's other states. For the purposes of this Agreement, "exclusive" means that MJ shall not provide Services or represent any other law firm in the state of New York. This does not mean that MJ cannot market with other firms that perform work in said state, but means that MJ will not represent any other firm in said state. PINCUS will receive all event information in the same manner as all other MJ Connections' firms/clients and will have the opportunity and notice to attend these events.

PINCUS will provide an initial list of prohibited client and prospects. MJ will not intentionally market to those clients without specific approval from PINCUS. (Addendum Attached)

4. **Reimbursement of Expenses.** PINCUS agrees to reimburse MJ for ordinary and necessary expenses MJ incurs in performing Services previously approved by PINCUS. MJ will bill expenses monthly and PINCUS shall reimburse MJ for all expenses incurred in connection with the furnishing of Services under this Agreement. These expenses include but are not limited to conference registration fees, airfare, dining and lodging, auto and other transportation as needed for any and all travel. MJ agrees to seek pre-approval of these expenses whenever possible. MJ will seek and obtain approval for any extraordinary or unusual expenses as necessary. PINCUS will reimburse travel expenses based on itemized statements MJ submits and will include actual bills, receipts, or other evidence of expenditure as required by PINCUS. Reimbursement is due and payable within thirty (30) days of PINCUS's receipt of an invoice for expenses.

5. **Confidentiality.** MJ shall treat as confidential and not possess or use, except as reasonably necessary or appropriate in providing the Services under this Agreement, any Confidential Information relating to the business affairs and activities of PINCUS (and/or any of its parent, subsidiary, and affiliated companies) including, but not limited to, the identification of clients and suppliers, financial information pertaining to PINCUS or its clients and/or PINCUS's business and marketing plans, personnel information, technical information, and all documents, and things related to PINCUS's business and activities disclosed to MJ in the course of MJ's Services. "Confidential Information" includes non-publicly available data, information or items (including third party data, information or items) in whatever form or medium, provided by PINCUS to MJ regardless of whether such data, information or items are marked or identified as "Confidential".

6. **Mutual Non-Disparagement.** Neither party shall, at any time during or the term of this agreement or at any time thereafter, make statements or representations, or otherwise communicate, directly or indirectly, in writing, orally or otherwise, or take any action which may, directly or indirectly, disparage or be damaging to the other party (including any of the Company's subsidiaries, other affiliates, officers, directors, employees, partners or stockholders); provided that nothing in this Section shall preclude either party from making truthful statements or disclosures that are required by applicable law, regulation or legal process.

7. **Marketing Material.** All marketing material such as presentations and training materials distributed on behalf of PINCUS must be approved of in advance of its distribution.

8. **Miscellaneous.**

(a) The rights and obligations of PINCUS and MJ under this Agreement shall be binding upon and inure to the benefit of their respective successors and assigns. Neither party hereto may assign this Agreement or any right or obligation hereunder to any other person, corporation or other entity without the prior written consent of the other party hereto, to be granted or withheld in its sole discretion.

(b) MJ assigns and agrees to assign to PINCUS or its nominee all rights in inventions, digitally created artwork or other proprietary information conceived by MJ for PINCUS during the term of this Agreement with respect to any work that MJ performs under this Agreement.

2

(c) All notices required to be given under the terms hereunder, or which either of the parties may desire to give hereunder, shall be in writing and delivered personally or sent by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

**MJ Connections, Inc.**

1907 McMillan Ave.

Dallas, TX 75206

**Pincus Law Group**

425 RXR Plaza

Uniondale, NY 11556

or to such other address or the attention of such other person or persons as the party to whom notice is given may have theretofore designated by notice to the other party hereto. Any notice given in accordance with the foregoing shall be deemed to have been given when delivered personally or on the day next following the date upon which it shall have been deposited in the United States mail.

(d) This Agreement represents the entire contract between the Parties with respect to the subject matter hereof and shall not be modified or affected by any offer, proposal, statement or representation, oral or written, made by or for any party in connection with the negotiation of the terms hereof. This Agreement may be changed or modified only by a written instrument signed by each of the Parties hereto.

(e) This Agreement shall be governed by and construed under the laws of the State of Texas governing contracts made and to be performed in that state.

(f) This Agreement may be executed in several counterparts, each of which will be deemed an original but all of which will constitute one and the same instrument.

(g) The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

**In Witness Whereof**, the parties have executed this Agreement as of the day and year first above written.

**Pincus Law Group, PLLC**                   **MJ Connections, Inc.**

By: Caryn Pincus                              By: Majenica L. Springer

X _____                           X _____

Date: 11/28/17                                Date: 11/28/17

3

Case 2:23-cv-05528  Document 1-2  Filed 07/20/23  Page 16 of 16 PageID #: 25

## FIRST ADENDUM TO MJ CONNECTIONS BUSINESS DEVELOPMENT CONTRACT

Shellpoint
Select Portfolio Solutions ("SPS")
Champion Mortgage

**Pincus Law Group, PLLC**

**MJ Connections, Inc.**

By: Caryn Pincus

X

Date: 11|28|17

By: Majenica L. Springer

X

Date: 11/28/17