UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCUS LAW GROUP, PLLC,<br><br>                                  Plaintiff,<br><br>       -against-<br><br>MJ CONNECTIONS, INC.,<br><br>                                Defendant. | **STIPULATION REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>2:23-cv-05528 (ADM)(JMW) |

The Parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

      1.      <u>Cooperation</u>.  The Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the Parties are unable to agree on the parameters or timing of discovery, the Parties agree that the default standards contained in this Stipulation shall apply.

      2.      <u>Proportionality</u>. The proportionality standards set forth in Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(C) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.    ESI Disclosures**

      1.      Upon the service of discovery requests under Federal Rule of Civil Procedure 34, the Parties will meet and confer concerning (a) the custodians whose hard copy and electronic records will be searched for responsive materials and (b) the search terms that will be used for searches of ESI records maintained by those custodians or in Shared Sources likely to contain responsive materials and will continue to negotiate in good faith.  If the Parties are unable to reach

1

mutual agreement about the custodians or search terms, then the Parties may submit any disagreements to the Court for informal resolution. Nothing in this paragraph precludes or limits any Party from using or relying on information in the possession of custodians not agreed on by the Parties (or ordered by the Court).

**C.     Preservation of ESI**

1.      The Parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. Absent a showing of good cause by the requesting party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall preserve all discoverable ESI in their possession, custody, or control.

2.      Absent a showing of good cause by the requesting party, the Parties agree that the following categories of ESI are not reasonably accessible pursuant Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure and need not be preserved or searched in response to requests for production:

    a. Deleted, slack, fragmented, or other data only accessible by forensics;

    b. Data contained in disaster-recovery back-up tapes and similar network disaster-recovery locations;

    c. Back-up data that are substantially duplicative of data that are more accessible elsewhere;

    d. Legacy data sources that are not susceptible to electronic searching or would be incompatible with or unintelligible on the systems in use;

    e. Random access memory (RAM), temporary files, or other ephemeral data that

    are difficult to preserve without disabling the operating system;

  f. On-line access logs and data, such as temporary internet files, internet history, cache, cookies, and the like;

  g. Data in metadata fields that are frequently updated automatically, such as last-opened dates;

  h. Electronic calendar, contacts, mail, notes, and tasks data stored on a mobile device which is maintained or synchronized through a network account (such as Microsoft Exchange or POP3), provided that a copy of such information is saved elsewhere.

  i. Server, system, or network logs.

**D.**  **Privilege**

  1. The Parties have agreed to log all privileged ESI in a privilege log and redact portions of ESI that are privileged. The Parties shall confer in good faith regarding the use of categories to reduce document-by-document logging, once they have engaged sufficiently in discovery to determine appropriate categories. For documents for which there is not an agreed upon category, the Parties shall identify the withheld documents by date, type (e.g., email, PDF, Excel document), sender, recipient, basis for withholding, and a sufficient description to enable other Parties to assess the claim.

  2. The Parties shall not be required to provide privilege logs for any attorney-client communications, attorney work product, and materials prepared in anticipation or connection with the litigation, if such information was generated after December 29, 2022. However, the Parties reserve the right to request a privilege log should the need arise.

  3. Activities undertaken in compliance with the duty to preserve information are

protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), absent a showing of good cause.

4. Information produced in discovery that is protected by privilege or the attorney work product doctrine shall be immediately returned to the producing party, and its production shall not constitute a waiver of any protection afforded to such information, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

5. The Parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations, or the Parties' "claw-back" rights and obligations pursuant to the Confidentiality Order in this case.

E. **ESI Discovery Procedures**

1. Search Methodology. Nothing in this Stipulation shall require a producing party to utilize any particular collection or search protocol for any particular population of ESI or entire ESI data source. For the avoidance of doubt, targeted collection that uses or combines reasonable search terms, logical search operators, and limiting parameters (such as relevant dates, business units, recipients, network or operating system folders, etc.) and information gathered from interviews concerning the nature and scope of information likely to be available from possible custodians, may be used by the producing party to formulate a reasonable protocol to determine and collect the pool of potentially responsive ESI for review and potential production.

2. Relevant Time Period. The Parties agree that the relevant time period for ESI that is likely to contain discoverable information is July 1, 2017 - December 29, 2022.

      3.      <u>Objections to Search Methodology</u>. The producing party, simultaneously with its responses to requests for production, shall furnish a separate detailed attorney letter concerning the producing party's search terms, parameters, or protocols used to collect potentially responsive ESI from each custodian. Within 20 days of receiving the production and the producing party's statement of search methodology, the requesting party may, but need not, propose 5 or fewer additional search terms or queries to be used by the producing party to collect additional responsive ESI that would not be duplicative or cumulative of the information already collected or produced, to the extent the requesting party asserts that the production is incomplete or deficient. The Parties shall thereafter meet and confer to reach an agreement concerning the need to collect additional ESI and the appropriate search methodology. In the event an agreement is not reached, the objecting party may move before the court for an appropriate order. Nothing herein shall preclude a Party from asking for an additional search, should the need arise.

      4.      <u>Format</u>. The Parties will produce ESI subject to the specifications annexed hereto as Appendix A.

      5.      <u>De-duplication</u>. The Parties shall, to the extent possible, de-duplicate their ESI production across custodial and non-custodial data sources.

**F.    Other Provisions**

      1.      <u>Admissibility</u>. Neither this Stipulation nor the production of any information pursuant to this Stipulation shall be construed as an admission that such information, or any testimony concerning such information, would be admissible in evidence of this litigation or in any other proceeding.

      2.      <u>Costs</u>. Each Party will bear the costs to process and review its own documents according to this protocol. Notwithstanding this paragraph, nothing in this protocol limits or

prohibits a prevailing party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law and as provided by applicable local rules.

3. *Counterparts*. It is contemplated that this Stipulation may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

4. *Modification.* This Stipulation may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**STIPULATED AND AGREED:**

| | |
|---|---|
| Dated: May 8, 2024 | Dated: May 8, 2024 |
| **NIXON PEABODY LLP** | **MERLE, BROWN & NAKAMURA, P.C.** |
| By:*/s/ Vincent D. Nguyen*<br>    Joseph J. Ortego<br>    Vincent D. Nguyen<br>55 W. 46th, Tower 46<br>New York, New York 10036<br>Telephone: (212) 940-3000 | By: */s/ Stephen Nakamura*<br>    Stephen Nakamura<br>Merle, Brown & Nakamura, P.C.<br>18 East 41st St., Suite 1906<br>New York, New York 10017<br>Tel.: 212-471-2990 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

## **Appendix A**

The Parties shall produce ESI in a form and substance that is substantially compliant with the following specifications:

**General Production Format Specifications:**

a. **Image Format**: Black-and-white Group IV Single-Page TIFFs (300 DPI). Color images should be provided in .JPG format when color is necessary. Image file names should match the page (Bates) identifier for that specific image and end with the .tif (or .jpg if needed) extension.

b. **Database Load Files:** Documents produced shall be provided with (i) Standard Concordance delimited load file(s) and (ii) Opticon delimited cross-reference file(s). Concordance load files shall contain the fields listed in Exhibit A.

c. **OCR/Extracted Text Format:** Document level text files named for the Bates number corresponding to the first page of the document. Do not include text in the load file. Text files should be in a directory named "TEXT".

d. **Natives:** Documents produced in native file format shall be labeled, to the extent practicable, by assigning a Bates number as the filename (e.g., ABC0000001.xls). The load file should contain a field called "NATIVE" with the path to the corresponding native file. Native files should be in a directory named "NATIVES"
   i. Excel spreadsheets and other files that cannot be imaged in a useful manner should be produced in native format to enable the parties to review those files. If there are non-printable files in the production set (mpg, wav, mdb, etc.), they should be produced as native files.
   ii. Counsel may seek supplemental production of native files for any produced images that are deemed unusable, unsearchable, or unduly burdensome.

e. **Bates Numbering:**
   i. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0- padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.
   ii. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.
   iii. The producing party will brand all TIFF images in the lower right hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

f. **Attachment Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing an e-mail with its attachments, the attachments should be processed in order behind the e-mail and the production load file should reflect this relationship in the BegProdAtt/EndProdAtt fields.

g. **Production Media/Transfer:** Productions may be produced on encrypted CD, DVD, thumb drive, or secure file transfer site.