UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PINCUS LAW GROUP, PLLC,

                     Plaintiff,

                     **MEMORANDUM ORDER**

        -against-                    23-CV-05528 (AMD) (JMW)

MAJENICA LYNN SPRINGER. *et al.*,

                     Defendants,
-------------------------------------------------------------------X

**A P P E A R A N C E S:**

    Vincent Dai-Viet Nguyen, Esq.
    **Nixon Peabody LLP**
    55 West 46th Street, Tower 46
    New York, NY 10036
    *Attorney for Plaintiff and Counter Defendant Pincus Law Group, PLLC*

    Stephen H. Nakamura, Esq.
    **Merle Brown & Nakamura P.C.**
    90 Broad Street, Suite 2201
    New York, NY 10004
    *Attorney for Defendant and Counter Claimant MJ Connections, Inc.*

**WICKS,** Magistrate Judge:

    Plaintiff, Pincus Law Group, PLLC ("Pincus" or Plaintiff), commenced this suit against Defendant MJ Connections, Inc. ("MJ Connections" or Defendant) alleging tortious interference with contract and breach of contract (ECF No. 21).[1]  MJ Connections asserts counterclaims of its own alleging breach of contract for failure to provide contractually agreed-to accountings, to make payments as agreed, and for attorneys' fees.  (ECF No. 22.)

---

[1] Defendant Springer has been terminated as a party to this case and is no longer named in the Amended Complaint.  (*See* ECF No. 21); (*see* docket entry dated Jan. 29, 2024.)  Accordingly, MJ Connections is the sole remaining Defendant.

1

Presently before the Court is Defendant MJ Connections' motion to compel, seeking a Court Order that Plaintiff produce billing statements or invoices that Plaintiff submitted to *any* mortgage service provider from November 28, 2017 through February 17, 2023.  (ECF No. 29.)  Plaintiff opposes.  (ECF No. 31.)  For the reasons set forth below, Defendant's motion to compel is GRANTED *in part* and DENIED *in part*.

## BACKGROUND

Plaintiff is a limited liability company with its principal place of business in New York providing legal services to various clients including mortgage service providers. (ECF No. 1 ¶¶ 1, 7.)  Defendant MJ Connections is an Indiana corporation operating under Texas law.  (*Id.* ¶ 2.)  On November 28, 2017, the parties entered into an Agreement (*id.* ¶ 9), in which Pincus engaged "the services of MJ to provide advice, assistance and consultation with respect to business development needs for Pincus's firm." (ECF No. 22-1 at 2.)  As to the payment MJ is to receive:

> PINCUS shall pay **10% of the amount billed to the Client/Servicer on all new referrals (for any state) directed to PINCUS by MJ at each milestone as the Servicer remits payment. PINCUS agrees to pay MJ within thirty (30) days of receiving said disbursement.** In the event this contract is terminated for any reason, PINCUS agrees to continue to pay this 10% fee on any monies received in conjunction with business secured by MJ during the contract period on existing files upon termination for a period of three (3) years from the termination of the contract [the "Tail Period"].
> …
>
> PINCUS will provide 10% payment along with a monthly accounting of referrals billed to each Servicer and payments received from each Servicer for referrals received in the prior month.
> …
>
> MJ will provide exclusive marketing for PINCUS in the state of New York. MJ will provide non-exclusive services in PINCUS's other states….MJ will not intentionally market to [prohibited client and prospect] clients without specific approval from PINCUS.

(ECF No. 22-1 at 2-3.)  One of the prohibited clients was Shellpoint Mortgage Servicing ("Shellpoint").  (ECF No. 21 ¶ 15.)  Despite this provision in the Agreement, MJ Connections

2

marketed directly to Shellpoint without Plaintiff's approval which constitutes a breach of the Agreement's terms.  (*Id.* ¶ 23.)  On December 27, 2019, Plaintiff paid the balance it owed to MJ Connections which MJ Connections accepted.  (ECF No. 21 ¶ 42.)  The agreement ended two days thereafter and the tail period was to end on December 29, 2022.[2]  (*Id.* ¶ 44.)

Defendant, however, claims that Plaintiff "*specifically approved*…that MJC could market to [Shellpoint]" and the accounting records and payments to MJ Connections should therefore include services to Shellpoint.  (ECF No. 22 ¶¶ 97-98) (emphasis added).

## **PROCEDURAL BACKGROUND**

On July 19, 2023, MJ Connections sued Pincus in the Northern District of Texas.  *MJ Connections, Inc., v. Pincus Law Group, PLLC,* No. 23-CV-1616 (N.D. Tex. Oct. 20, 2023).  The complaint alleged breach of contract, quantum meruit, promissory estoppel, and declaratory judgment for Pincus's failure to provide a proper accounting and final payments for all amounts billed.  Pincus filed a motion to dismiss or transfer the case to New York given the Court's lack of personal jurisdiction over Pincus.  *See* Motion to Dismiss, *MJ Connections, Inc., v. Pincus Law Group, PLLC,* No. 23-CV-1616 (N.D. Tex. Oct. 20, 2023), ECF No. 11.  Ultimately, on October 20, 2023, the Texas court found that Pincus neither had a general business or physical presence in Texas nor did MJ Connections demonstrate that Pincus "actively engaged in various activities taking place in the forum state" sufficient to confer jurisdiction over Pincus.  *See MJ Connections, Inc., v. Pincus Law Group, PLLC,* No. 23-CV-1616 (N.D. Tex. Oct. 20, 2023), ECF No. 21 at 6-9, 14.  Further, the agreement was executed in New York and performance was not required in Texas.  (*Id.* at 16.)  The court thus dismissed the action without prejudice.

---

[2] Defendant, however, states that the termination date is February 16, 2023, since the Agreement was formally terminated 60 days following the notice of termination provided to MJ Connections on December 18, 2019.  (ECF No. 22 at 13.)

While the Texas suit was pending against Pincus, Pincus filed suit in state court and the action was subsequently removed to this Court on July 20, 2023.  (ECF No. 1.)  Plaintiff alleges MJ Connections is liable for tortious interference with contract because it (i) interfered with Shellpoint's and Plaintiff's business relationship; (ii) provided services to another firm, Hill Wallack, which diverted business from Plaintiff; (iii) discouraged prospective and current clients of Plaintiff's from working with it; and (iv) undermined Plaintiff's reputation in the mortgage service industry.  (ECF No. 21 ¶ 53.)  This caused a decrease in revenue, resulting in Pincus having to lay off several employees.  (*Id.* ¶ 55.)  Further, MJ Connections breached the Agreement by marketing to Shellpoint—a prohibited client—without Plaintiff's approval and worked with other firms, causing a loss of business revenue.  (*Id.* ¶¶ 59-60, 63-65.)

MJ Connections filed an Answer, denying all material allegations and raising several affirmative defenses.  (ECF No. 22.)  In addition, MJ Connections asserted several counterclaims: (1) Breach of Contract for (a) failure to provide contractually agreed to accounting(s) and (b) failure to make contractually agreed to payments believed to be approximately $300,000; and (2) attorneys' fees under Texas law for being forced to defend itself against Plaintiff and lodge these counterclaims. (*Id.*)

The Court held an Initial Conference with the parties at which a discovery schedule was implemented.  (ECF Nos. 11 and 12.)  On December 5, 2023, the parties filed a joint status report informing the Hon. Ann M. Donnelly that the Northern District of Texas—the forum in which MJ Connections' case was originally filed—granted Pincus's motion to dismiss without prejudice based on lack of personal jurisdiction.  (ECF No. 13.)  Pincus additionally requested

4

the opportunity to amend the Complaint in this Court, which was granted.[3] (*Id.*); (Electronic Order dated Dec. 15, 2023 and Jan. 4, 2024); (ECF Nos. 20-21).

As to discovery, the Court held a Status Conference with the parties on May 9, 2024 and extended the fact discovery deadline to August 30, 2024 and held all other dates and deadlines in abeyance. (ECF No. 28.)

## THE PARTIES' CONTENTIONS

### A. Defendant's Motion to Compel (ECF No. 29)

Defendant, MJ Connections, Inc. requests a Court Order directing Plaintiff to "immediately produce all billing statements or invoices submitted by Pincus to any mortgage service provider for the period of November 28, 2018 through February 17, 2023."[4] (ECF No. 29 at 1.) Specifically, Defendant states that Pincus should produce invoices submitted to a provider named Shellpoint. (*Id.*)

Pincus's first set of documents produced did not include invoices for the entire relevant period and for all mortgage servicers. (ECF No. 29 at 3.) When MJ Connections requested the documents, Pincus again failed to produce them, citing an attempt to collect further documents

---

[3] The new complaint was amended to eliminate the original complaint's fourth claim for breach of the covenant of good faith and fair dealing and references to Defendant Springer's liability given that she was terminated as a party to the case. (ECF Nos. 1 and 21.)

[4] The requests for production requested the following information:

> All billing statements or invoices submitted by Pincus Law to any Servicer during the Agreement Period. Request for Production No. 27.

> All billing statements or invoices submitted by Pincus Law to any Servicer during the Tail Period. Request for Production No. 28.

(ECF No. 29 at 3.) Services is defined as "any company that services mortgage loans or that provides support to mortgage loan services, including without limitation,…Shellpoint Mortgage Servicing…." (*Id.*) Plaintiff objected to these requests stating that the documents may not be in Plaintiff's possession; they were overly broad and unduly burdensome; and searching for the documents would impose a disproportional burden. (*Id.*)

5

and a global IT outage which delayed production of the documents. (*Id.*) MJ Connections *again* requested the documents on July 24th stating that the invoices go to the "heart of this litigation" and should have already been produced. (*Id.* at 4.) On August 2, 2024 Pincus produced additional invoices, none of which related to Shellpoint. (*Id.* at 4-5.)

The parties met and conferred on August 7th, but Pincus stated it was not obligated to produce the requested information given MJC's breach of the Agreement by marketing services to Shellpoint—this is the first time such an argument was raised by Pincus. (*Id.* at 5.) MJ Connections states that Pincus uses its failure to pay as justification for ignoring its obligations related to discovery. (*Id.*)

Defendant states the invoices are crucial to engaging in settlement discussions and the parties already agreed to produce the documents, including Shellpoint documents. (ECF No. 29 at 5.) Further, MJ Connections states that the issue as to whether MJ Connections breached the agreement by providing marketing services to Shellpoint is a question of fact and Pincus cannot simply refrain from providing the relevant documents. (*Id.*)

### B. Plaintiff's Opposition (ECF No. 30)

Plaintiff opposes and asks the Court to deny Defendant's motion, stating that the request is overbroad, "clearly irrelevant," and is tantamount to a fishing expedition that would unduly burden Plaintiff. (ECF No. 31 at 1.)

*First,* Plaintiff states that the request exceeds the applicable timeframe—the applicable end date pursuant to the ESI Stipulation (ECF No. 25 at 4) is December 29, 2022, not February 17, 2023. (ECF No. 31 at 3.) Therefore, the request's timeframe should be narrowed to July 1, 2017 through December 29, 2022. (*Id.* at 4.)

*Second,* Plaintiff alleges that MJC's erroneously believes that "it successfully referred numerous MJC Referrals to Pincus." (ECF No. 31 at 2.) But Plaintiff has told MJ Connections that those clients believed to be referrals "either referred little or no work to Pincus," attaching billing statements and invoices for these "referrals" as support. (*Id.*) However, MJ Connections stubbornly states that Pincus is withholding documents but Plaintiff avers that no other documents exist. (*Id.*) Plaintiff is able to support its position because (a) "the number of successful MJC Referrals is much lower than MJC apparently believes;" and (b) "the federal government imposed a moratorium on mortgage servicers for most of the Agreement and [three-year period], restricting the amount of work able to be performed." (*Id.*) Further Shellpoint, says Plaintiff, cannot be considered an MJ Connections Referral since Pincus recruited Shellpoint and MJ Connections promised to avoid marketing to it. (*Id.* at 4.)

*Relatedly,* Plaintiff maintains that the request is irrelevant and constitutes a fishing expedition and Defendant has not demonstrated relevance for the documents at issue. (*Id.* at 3-4.) Pincus has already produced relevant billing statements and invoices for the MJ Connections Referrals. (*Id.* at 4.) Plaintiff states that Defendant is *not entitled* to the requested documents but is only entitled to the documents related to MJ Connections Referrals, not Pincus's clients generally. (*Id.* at 2.)

## THE LEGAL FRAMEWORK

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

7

As relevant here, Fed. R. Civ. P. 34 requires production of responsive documents "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). Encompassed within this mandate is the obligation to make efforts to obtain information within its legal reach. If a party has the "practical ability to obtain and produce the documents" then it has "possession, custody, or control" over such document. *Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, No. 21-CV-9472 (JGK) (KHP), 2022 U.S. Dist. LEXIS 154197, at *4-5 (S.D.N.Y. Aug. 26, 2022).

## DISCUSSION

### A. Temporal and Substantive Scope

Defendant requests documents from November 28, 2017 through February 17, 2023. However, Plaintiff disputes this scope, arguing that the parties agreed to a narrower time frame in the stipulated ESI protocol. (ECF No. 25.)

Here, the parties stipulated to a scope of July 1, 2017 through December 29, 2022. (ECF No. 25 at 4.) Further, Plaintiff even agrees that this is the appropriate time frame to produce documents. (ECF No. 31 at 4.) ("Pincus maintains that it is only obligated to produce billing statements or invoices for MJC Referrals between July 1, 2017 and December 29, 2022 pursuant to the ESI Stipulation.") As such, any documents to be produced shall not exceed the December 29, 2022 agreed upon date.

As to the substantive scope, Plaintiff states that Defendant is not entitled to all billing statements and invoices—rather, it is only entitled to referred clients' documents. Defendant, however, states that included in that referral category is Shellpoint, an entity that Plaintiff specifically asked MJ Connections to provide services for in writing. (ECF No. 29 at 2.) For these reasons, Plaintiff shall provide the requested documents *for MJ Connections Referrals*

8

*including Shellpoint invoices and billing statements* for the period of July 1, 2017 through December 29, 2022.[5]

### B. Relevance

The parties executed a referral contract on November 28, 2017, which required Plaintiff to pay MJ Connections 10% of the amount that Pincus billed any client that was referred to Pincus by MJ Connections for the contract term and three years thereafter (the "Tail Period")—that is, Pincus was to pay MJ Connections a 10% referral fee for clients obtained without MJ Connections' assistance.  MJ Connections was prohibited from marketing to three mortgage service providers, which included Shellpoint since Pincus began recruiting them.  Despite the terms in the agreement, Pincus has refused to pay MJ Connections claiming MJ Connections breached the Agreement's exclusivity provision by representing another firm which diverted business from Plaintiff and MJ Connections breached the Agreement by marketing Pincus's services to Shellpoint without prior approval.  (ECF No. 29 at 2.)  MJ Connections denied Pincus's allegations, positing that Pincus asked MJ Connections to provide services to Shellpoint and agreed to pay MJ Connections for its work related to Shellpoint.  (*Id.*)

The billing statements and invoices requested could indeed shed light on the issue of whether Plaintiff breached any contract provisions in failing to provide the requisite accounting or payments to Defendant, particularly for Shellpoint.  (*See generally* ECF No. 22.)  Further,

---

[5] To the extent Plaintiff insists that no further responsive documents exist, Plaintiff shall provide a sworn affidavit or declaration for the client stating the same. *Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96 Civ. 8138 (SWK) (HBP), 1997 WL 394958, at *2-3 (S.D.N.Y. July 11, 1997) (requiring affidavit that no responsive documents exist); *Hannah v. Wal-Mart Stores, Inc.*, 3:12CV1361 (JCH), 2014 U.S. Dist. LEXIS 75745, at *9 (D. Conn. June 3, 2014) (requiring plaintiffs to provide a sworn statement in their responses for defendants' requests for production that "after a diligent search, all responsive documents have been produced or that no responsive documents have been found").

Plaintiff initially agreed to provide the documents but cited various delays—gathering additional documents and a global IT outage—as the reasons for its failure to produce. (ECF No. 29.)

### C. Unduly Burdensome

Plaintiff has not demonstrated how recovering the documents would be unduly burdensome. Rather, it merely states that the request amounts to a fishing expedition intended to unduly burden Plaintiff. Plaintiff's conclusory statements are insufficient as an objection here and the documents shall therefore be produced. *See e.g., Bursztein v. Best Buy Stores, L.P.,* No. 20-CV00076 (AT) (KHP), 2021 WL 1961645, at *6 (S.D.N.Y. May 17, 2021) ("[C]ourts in this District have previously said that general objections should rarely be used, unless the objections specifically apply to each document request at issue."); *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015) ("When determining a motion to compel the production of ESI, a district court conducts a two-stage inquiry: first, has the party resisting discovery shown that the information in question is not reasonably accessible because of undue cost, and second, has the party requesting discovery nonetheless shown good cause to obtain it?"); *Zhulinska v. Niyazov Law Grp., P.C.*, No. 21-CV-1348 (CBA), 2021 U.S. Dist. LEXIS 219213, at *8 (E.D.N.Y. Nov. 12, 2021) (finding that defendants failed to demonstrate that the information was not reasonably accessible or that production would be unduly burdensome); *Integrated Structures Corp. v. Liberty Mut. Ins. Co.*, No. 21-CV-1744-ARR-SJB, 2022 U.S. Dist. LEXIS 205602, at *5 (E.D.N.Y. Aug. 9, 2022) (finding that merely "[s]aying something is voluminous, without describing the volume or the costs of search or production, is not persuasive").

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel **GRANTED** *in part* and **DENIED** *in part.* (ECF No. 29.) Plaintiff is required to produce the requested documents *regarding MJ Connections Referrals only, including Shellpoint documents*, for the period of July 1, 2017 through December 29, 2022 on or before August 29, 2024.

Dated: Central Islip, New York
August 26, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

11