UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
PINCUS LAW GROUP, PLLC,

                              *Plaintiff*,

                                                                **ORDER**
      -against-                                          23-CV-05528 (SJB) (JMW)


MJ CONNECTIONS, INC.,
                              *Defendant.*
----------------------------------------------X

**A P P E A R A N C E S:**

    Vincent Dai-Viet Nguyen
    **Nixon Peabody LLP**
    55 West 46th Street, Tower 46
    New York, NY 10036
    *Attorney for Plaintiff*

    Stephen H. Nakamura
    **Merle Brown & Nakamura P.C.**
    90 Broad Street, Suite 2201
    New York, NY 10004
    *Attorney for Defendant*

**WICKS,** Magistrate Judge:

Plaintiff Pincus Law Group, PLLC ("Pincus" or "Plaintiff") commenced the instant action on June 14, 2023 against MJ Connections, Inc. ("MJ Connections" or "Defendant"), asserting claims of tortious interference with a contract, breach of contract involving prohibited clients and exclusive services, and breach of the covenant of good faith and fair dealing. (*See* ECF No. 1, Ex. B at ¶¶ 27-54.) The parties are before the Court on Defendant's motion to compel the production of certain electronically stored information ("ESI") in response to Defendant's most recent Request for Production, and order Plaintiff to either reproduce its recent

1

voluminous document demand in a searchable format and without purportedly irrelevant documents or pay Defendant's legal fees for the time requires to review these documents.

For the following reasons, Defendant's motion (ECF No. 47) with respect to compelling Plaintiff to comply with the request for ESI is **GRANTED** and its motion directing Plaintiff reproduce the documents in searchable format without the irrelevant documents is likewise **GRANTED**.

## BACKGROUND

Pincus, a law firm located in Uniondale, New York, entered into an agreement with Defendant, a Texas consulting firm, to provide services related to, *inter alia*, client relations and business development.[1] (*See* ECF No. 21 at ¶¶ 6-9.) The agreement contained provisions, as relevant here, requiring that Defendant "not provide Services or represent any other law firm in the state of New York." (*Id.* at ¶ 12.) Additionally, in agreeing to assist Pincus with "developing client relations," Defendant further agreed that it would not "intentionally market to" three identified mortgage firms: Shellpoint Mortgage Servicing ("SMS"), Select Portfolio Solutions, and Champion Mortgage. (*Id.* at ¶ 15.) In exchange, Pincus agreed to pay "10% of the amount billed to the Client/Servicer on all new referrals (for any state) directed to Pincus by MJ [Connections]" at various payment milestones. (*Id.* at ¶ 16) (alteration in original). As alleged, Defendant nevertheless began "marketing directly" to SMS without seeking Plaintiff's permission to do so. (*Id.* at ¶¶ 23-24.)

As such, Plaintiff commenced the underlying lawsuit in New York State Supreme Court, Nassau County, which was removed to this Court on July 20, 2023 on the basis of diversity

---

[1] The Amended Complaint removed the claim of breach of the covenant of good faith and fair dealing. *Compare* ECF. No. 21 (i.e., the Amended Complaint), *with* ECF No. 1 at ¶¶ 48-54.

jurisdiction. (*See* ECF No. 1 at ¶¶ 7-12.) The parties appeared before the undersigned for an Initial Conference on November 1, 2023, after which a Scheduling Order was implemented for the case. (ECF No. 12.) On May 9, 2024, the Court then so-ordered the parties' stipulations regarding the discovery ESI. (ECF Nos. 25, 27.)

On March 28, 2025, a week before the end date of fact and expert discovery (*see* Electronic Order dated February 26, 2025), Defendant filed a letter motion requesting the Court: (1) order Plaintiff to produce ESI in response to MJC's "Request 19"[2] within MJC's Second Request for Production; and, in response to "Pincus' eleventh-hour 'document dump'" (2) order Plaintiff to either reproduce its production in response to the Second Request without thousands of pages of "plainly irrelevant documents" and in a searchable format, or pay MJC's legal fees for sorting through these documents. (ECF No. 47 at p. 1.) Plaintiff opposed this motion on April 1, 2025, arguing Request 19 is overbroad and irrelevant to the current action, and the supposed "document dump" was merely a turnover of relevant documents in an unsearchable format that, to date, MJC had not objected to in prior productions. (*See* ECF No. 48 at pp. 4-6.)

## DISCUSSION

"Motions to compel are left to the court's sound discretion." *Bartlett v. DeJoy*, No. 22-CV-03398 (GRB)(JMW), 2023 WL 3306963, at *1 (E.D.N.Y. May 7, 2023) (citing *Mirra v.*

---

[2] Request 19 asks for:

> With respect to each Servicer, electronically stored information generated in/by the Software System(s) concerning the Invoices submitted by Pincus Law concerning legal matters referred to Pincus Law during the Referral Period and payments received by Pincus Law during the Payment period in the form of a report / list / query result that includes the following (in no particular order): 1) the Invoice number; 2) the Invoice date; 3) the amount of the Invoice; 5) the date of the payment; 6) the state applicable to the matter to which the Invoice relates (i.e., NY, NJ, PA or FL); 7) the type of matter referred (i.e., bankruptcy, foreclosure, eviction, litigation, etc. . . .); and 8) the date the matter was referred to Pincus.

ECF No. 47 at 2.

3

*Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.")). "Rule 26 of the Federal Rules of Civil Procedure, as amended in 2015, provides that a party is entitled to discovery on 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Under the amended rules, '[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" *Goss v. E.S.I. Cases & Accessories, Inc.*, No. 18-CV-2159 (GBD)(JLC), 2019 WL 3416856, at *2 (S.D.N.Y. July 30, 2019) (quoting *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016)).

Similarly, Fed. R. Civ. P. 34, the rule governing the production of ESI, provides "that a party may serve on any other party a request to produce documents and ESI within the party's possession, custody, or control so long as the documents and information are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2017 WL 5664852, at *7 (S.D.N.Y. Nov. 27, 2017) (citing Fed. R. Civ. P. 34(a)(1), 26(b)(1)).

4

I. *<u>ESI Relating to Request 19</u>*

Here, Defendant has met the necessary burden of demonstrating relevance and proportionality with respect to Request 19. *See Vaigasi*, 2016 WL 616386, at *14 ("Proportionality and relevance are "conjoined" concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate."). The ESI sought in Request 19 directly pertains to the damages MJC seeks, as evidenced by MJC's counterclaims asserting it is entitled to 10% of the amounts received by Plaintiff from mortgage servicers under the parties' agreement. (*See* ECF No. 45 at ¶¶ 120, 139, 141.) Indeed, complying with Request 19 would provide MJC with the precise amount that Pincus received for legal matters referred to Pincus from the Mortgage Servicers and would thus be necessary for an accurate calculation of what damages MJC is owed.

Plaintiff counters Request 19 is "cumulative, unnecessary, and would not significantly contribute to the resolution of the underlying dispute as MJC has already obtained this information from Shellpoint and subpoenaed similar information from . . . BSI Financial Services" (ECF No. 48 at 5.) Request 19, however, seeks ESI "[w]ith respect to each Servicer."[3] As such, because there are Servicers other than Shellpoint and BSI Financial Services as defined in the Second Request, Request 19 serves the purpose of ascertaining the *full* amount from *each* Servicer. Similarly, Request 19 identifies the precise parties Defendant seeks information from, the applicable time period involved, and the specific information requested. (*See* ECF No. 47 at 2

---

[3] "Servicer means any company that services mortgage loans or that provides support to mortgage loan servicers including Taherzadeh PLLC; Vendor Resource Management, Inc.; BSI Financial Services; American InfoSource; Freedom Mortgage; MCM Capital; Olaf Consulting; Shellpoint Mortgage Servicing . . . . .[the list of servicers continues] . . . .". (ECF No. 47 at p. 2 n.2.)

5

n.2.) Though Plaintiff asserts obtaining this ESI would require generating reports from multiple servers, Plaintiff fails to persuade the Court that such a technological undertaking outweighs MJC's ability to obtain information which would significantly assist in calculating the correct amount it is owed pursuant to the parties' Business Development Agreement. (*See* ECF No. 1-2, Agreement, sub. 3); *see also Zhulinska v. Niyazov Law Grp., P.C.*, No. 21-CV-1348 (CBA), 2021 U.S. Dist. LEXIS 219213, at *8 (E.D.N.Y. Nov. 12, 2021) (finding that defendants failed to demonstrate that the information was not reasonably accessible or that production would be unduly burdensome).

Accordingly, the ESI sought is both proportional and relevant to the counterclaim of damages MJC seeks against Plaintiff, a "fact of consequence to the action" that would be made more probable with the production of the ESI.  *See Vaigasi*, 2016 WL 616386, at *11.  *Cf. Gesualdi v. Interstate Payroll Company, Inc.*, 14-CV-6780 (ADS)(SIL), 2016 WL 737909, at *1 ("Accepting Plaintiffs' representation of the Discovery Demands as true, the information sought therein is potentially relevant to Plaintiffs' ability to recover a judgment in this action."); *see Cordero v. United States*, No. 19 CIV. 1320 (SLC), 2021 WL 568079, at *2 (S.D.N.Y. Feb. 16, 2021) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process") (citing *EM Ltd. v. Rep. of Arg.*, 695 F.3d 201, 207 (2d Cir. 2012))). Defendant's motion compelling Plaintiff to comply with Request 19 is, therefore, granted.

## II. *The Request for Reproduction*

Defendant additionally requests that Plaintiff reproduce documents related to Plaintiff's "improper production . . . over 12,000 pages of non-searchable PDF," a majority of which MJC contends are "entirely unrelated" to the Second Request. (ECF No. 47 at p. 4.)  Defendant contends this "document dump" served "no other purpose than to obstruct MJC's review process

6

. . . and impede [its] ability to prepare for . . . deposition scheduled April 4th." (*Id.* at p. 5.) Conversely, Plaintiff maintains the voluminous production was done in good faith and in compliance with the relevant discovery requests made by Defendant. (*See* ECF No. 48 at 4-5.) With respect to the "non-searchability" of the documents, Plaintiff asserts these documents were produced in a similar or same manner as were other documents that had previously been produced for Defendant, yet Defendant never objected in the past. (*See id.* at p. 5.)

Rule 34 provides that the requesting party may designate the form in which the electronically stored information should be produced, and if the request does not specify, then it should be produced in a form in which it is ordinarily maintained, or in a reasonably usable form. *See Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) (referencing Fed. R. Civ. P. 34(b)(1)(C), 34(b)(2)(E)(ii)). Where a dispute arises as to the production of ESI, an ESI protocol that has been mutually entered into by the parties will govern so long as the protocol addresses the issue. *See Loc. 3621 v. City of New York*, No. 18-cv-04476 (LJL) (JW), 2023 WL 8804257, at *9 (S.D.N.Y. Dec. 20, 2023). Indeed, the parties in this case have witnessed the implementation of this principle. *See* ECF No. 32 at p. 8 (limiting the temporal scope of requested ESI in order to comply with the express terms of the ESI Stipulation) (*Pincus Law Group, PLLC v. Springer*, No. 23-cv-05528 (AMD) (JMW) (E.D.N.Y. Aug. 26, 2024)).

Here, the ESI Stipulation filed with the Court and then so-ordered notes the following regarding production of Native files[4]: "Counsel *may* seek supplemental production of native files

---

[4] Native Files are defined as "a file that was created in its native software, for example a Word, Excel, or PowerPoint file . . . ." *Recommendations for Electronically Stored Information (ESI)*, UNITED STATES DEPARTMENT OF JUSTICE AND ADMINISTRATIVE OFFICE OF THE U.S. COURTS (Feb. 2012), https://www.justice.gov/archives/dag/page/file/913236/dl?inline.

for any produced images that are deemed unusable, unsearchable, or unduly burdensome." (ECF No. 25, Appendix A, at p. 7, ¶ d.ii.) (emphasis added). The "images"[5] were to be formatted as "Black-and-White . . . Single-Page TIFFS . . .." *Id.* at ¶ a.[6] When Plaintiff delivered the nearly 12,000 documents at issue to Defendant, they allegedly arrived in unsearchable form. (*See* No. 47 at p. 4.) It follows, therefore, that based upon the plain text of the ESI Stipulation which the parties knowingly and mutually entered into, Defendant is well within its right to request reproduction of documents which are in an unsearchable form. Indeed, the ESI Stipulation does not include a provision that if a party fails to object to the form of documents produced in one instance the same party is deemed to have waived its right to a future objection. Plaintiff's argument to that effect is, therefore, unpersuasive. Rather, the parties are reminded—to use their own words—that ESI will be produced "subject to the specifications annexed [to the joint stipulation]." (ECF No. 25 at p. 5, ¶ 4.)

Moreover, according to MJC, nearly 90% of the 12,000 documents are irrelevant to the actual scope of the Second Request. (*See* ECF No. 47 at p. 4.) MJC points out that these documents included, *inter alia*, "hundreds of pages of the minutes of meetings [related to a] not-for-profit," case files and emails pertaining from a 2018 breach of contract case "and other unrelated litigations," "random solicitation emails[,] emails concerning negotiations over office equipment leases[,] resumes for potential job applications for periods post-dating the parties'

---

[5] Though not defined in the ESI Stipulation, an "image" in the ESI context is routinely understood as an "electronic 'picture' of how the document would look if printed. Images can be stored in various file formats, the most common of which are TIFF and PDF. Document images, such as TIFF and PDF can be created directly from native files, or by scanning hard copy." *Recommendations for Electronically Stored Information (ESI)*, *supra* note 4.

[6] A TIFF, aka "Targeted Image File Format", is defined as "[a]n industry-standard file format for storing scanned and other digital black-and-white, grey-scale, and full color images." *Recommendations for Electronically Stored Information (ESI)*, *supra* note 7.

8

Agreement[,] and Florida eviction referral files." (*Id.* at pp. 4-5.) Plaintiff responds that such documents are "relevant and *potentially relevant*" and were produced to ensure it fully complied with the Second Request. In doing so, Plaintiff urges the Court to recognize that "it has nothing to hide" and it is "commit[ed] to full disclosure and transparency". Though such statements appear to conform to the underlying goals of the federal rules governing discovery, "*well done is better than well said*."[7] Plaintiff neglects to connect how resumes and not-for-profit minute entries, coupled with Florida eviction notices, are relevant to the current breach of contract action. The rules governing discovery are to be liberally construed, but they are not meant to permit production of the documents that have minimal, if any, relevant value.

Accordingly, Plaintiff is directed to reproduce its production in response to the Second Request not only in a searchable format, but also without the documents previously mentioned or ones similar in nature.

## **CONCLUSION**

Based upon the foregoing, Defendant's Motion to Compel (ECF No. 47) is **GRANTED**. Plaintiff is hereby directed to produce the ESI pertaining to Request 19 and, similarly, reproduce documents in response to Defendant's Second Request that are relevant to the current dispute and in a searchable format, on or before **April 18, 2025**. The end date of all fact and expert discovery is <u>extended for the sole purpose</u> of complying with this Court's Order. The last date to take the first step towards summary judgment motion practice is, therefore, extended to **May 2, 2025**, and the deadline for the parties to submit their proposed Joint Pretrial Order in

---

[7] Benjamin Franklin.

9

conformance with Hon. Judge Bulsara's Individual Practices for Civil and Criminal Cases is extended to and including **May 16, 2025**.

Dated:   Central Islip, New York
        April 9, 2025

**SO ORDERED**:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge