**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------X
PINCUS LAW GROUP, PLLC,

**FILED**
**CLERK**

**2/6/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

*Plaintiff*,

**MEMORANDUM**
**AND ORDER**

-against-

23-CV-05528 (SJB) (JMW)

MAJENICA LYNN SPRINGER, and
MJ CONNECTIONS, INC.,
*Defendants*.
------------------------------------------------X

**A P P E A R A N C E S:**

       Joseph John Ortego
       Vincent Dai-Viet Nguyen
       **Nixon Peabody LLP**
       55 West 46th Street, Tower 46
       New York, NY 10036
       *Attorney for Plaintiff and Counter Defendant Pincus Law Group, PLLC*

       Stephen H. Nakamura
       **Merle Brown & Nakamura P.C.**
       90 Broad Street, Suite 2201
       New York, NY 10004
       *Attorney for Defendant and Counter Claimant MJ Connections, Inc.*

**WICKS,** Magistrate Judge:

Plaintiff Pincus Law Group, PLLC ("Pincus") commenced the instant action on June 14, 2023 against Majenica Lynn Springer[1] and MJ Connections, Inc. ("Defendants"), asserting claims of tortious interference with a contract, breach of contract involving prohibited clients and exclusive services, and breach of the covenant of good faith and fair dealing. (*See* ECF No. 21.)

---

[1] Majenica Lynn Springer was terminated on January 19, 2024 after the filing of the Amended Complaint. (ECF No. 21.)

1

MJ Connections ("MJC") asserts counterclaims of its own alleging breach of contract for failure to provide contractually agreed-to accountings, to make payments as agreed, and for attorneys' fees. (ECF No. 22.)

The parties are before the Court on MJC's motion for sanctions pursuant to Rule 37(a)(5)(A) and (C), Rule 37(b)(2) and Rule 37(d) of the Federal Rules of Civil Procedure, as well as pursuant to the Court's inherent authority. (ECF No. 62; ECF No. 62-1, Nakamura Decl. at ¶ 2.) Specifically, MJC avers that sanctions are warranted given Pincus's "repeated discovery abuses and a belittling of the litigation process" which occurred "through three separate courses of conduct: 1) Pincus's violation of the Court's August 26, 2024 discovery order granting in part MJC's motion to compel; 2) Pincus's document dump, consisting of over twenty-two thousand five hundred (22,500) pages of almost entirely irrelevant documents, and MJC's subsequent successful motion to compel arising therefrom; and 3) Pincus's willful failure to produce a properly prepared Rule 30(b)(6) witness." (*Id.* at ¶ 3.) For the reasons that follow, MJC's motion (ECF No. 62) is **DENIED**.

## BACKGROUND

Plaintiff is a limited liability company with its principal place of business in New York providing legal services to various clients including mortgage service providers. (ECF No. 1 at ¶¶ 1, 7.) Defendant MJ Connections is an Indiana corporation operating under Texas law specializing in business development and marketing for clients throughout the United States. (*Id.* at ¶ 2.) On November 28, 2017, the parties entered into an Agreement (*id.* at ¶ 9), in which Pincus engaged "the services of [MJC] to provide advice, assistance and consultation with respect to business development needs for Pincus's firm." (ECF No. 22-1 at 2.) As to the payment MJC was to receive:

> PINCUS shall pay **10% of the amount billed to the Client/Servicer on all new referrals (for any state) directed to PINCUS by MJ at each milestone as the Servicer remits payment. PINCUS agrees to pay MJ within thirty (30) days of receiving said disbursement.** In the event this contract is terminated for any reason, PINCUS agrees to continue to pay this 10% fee on any monies received in conjunction with business secured by MJ during the contract period on existing files upon termination for a period of three (3) years from the termination of the contract [the "Tail Period"].
> …
>
> PINCUS will provide 10% payment along with a monthly accounting of referrals billed to each Servicer and payments received from each Servicer for referrals received in the prior month.
> …
>
> MJ will provide exclusive marketing for PINCUS in the state of New York. MJ will provide non-exclusive services in PINCUS's other states….MJ will not intentionally market to [prohibited client and prospect] clients without specific approval from PINCUS.

(ECF No. 22-1 at 2-3.)

Despite the provision that MJC would not intentionally market to clients that Pincus deems prohibited clients, MJC allegedly marketed directly to Shellpoint Mortgage Servicing ("Shellpoint") without Plaintiff's approval resulting in a purported breach of the Agreement. (ECF No. 21 at ¶ 23.) On December 27, 2019, Plaintiff paid the balance it owed to MJC which MJC accepted. (*Id.* at ¶ 42.) MJC, however, claims that Plaintiff "*specifically approved . . . that MJC could market to [Shellpoint]*" and the accounting records and payments to MJC should therefore include services to Shellpoint. (ECF No. 22 at ¶¶ 97-98) (emphasis added).

Plaintiff alleges MJC is liable for tortious interference with contract because it (i) interfered with Shellpoint's and Plaintiff's business relationship; (ii) provided services to another firm which diverted business from Plaintiff; (iii) discouraged prospective and current clients of Plaintiff's from working with it; and (iv) undermined Plaintiff's reputation in the mortgage service industry. (ECF No. 21 at ¶ 53.) Further, Pincus maintains that MJC breached the Agreement by marketing to Shellpoint—a prohibited client—without Plaintiff's approval and

3

worked with other firms, causing a loss of business revenue. (*Id.* ¶¶ 59-60, 63-65.) MJC filed an Answer on February 16, 2024 denying all material allegations and raising several affirmative defenses. (ECF No. 22.) In addition, MJC asserted several counterclaims: (1) breach of contract for (a) failure to provide contractually agreed to accounting(s) and (b) failure to make contractually agreed to payments believed to be approximately $300,000; and (2) attorneys' fees for being forced to defend itself against Plaintiff and lodge these counterclaims. (*Id.*)

## PROCEDURAL BACKGROUND[2]

a. *The Prior Discovery Disputes*

On August 8, 2024, MJC filed a motion to compel Plaintiff to "immediately produce all billing statements or invoices submitted by Pincus to any mortgage service provider for the period of November 28, 2018 through February 17, 2023" particularly arguing that Pincus should produce invoices submitted to Shellpoint. (ECF No. 29 at p. 1.) On August 26, 2024, the Court directed Plaintiff to "produce the requested documents *regarding MJ Connections Referrals only, including Shellpoint documents*, for the period of July 1, 2017 through December 29, 2022 on or before August 29, 2024." *Pincus Law Group, PLLC v. Springer*, No. 23-CV-05528 (AMD) (JMW), 2024 WL 3937542, at *5 (E.D.N.Y. Aug. 26, 2024) (emphasis in original) ("August 26 Order"). In doing so, the Court noted that "[t]he billing statements and invoices requested could indeed shed light on the issue of whether Plaintiff breached any contract provisions in failing to provide the requisite accounting or payments to Defendant, particularly for Shellpoint." *Id.* In response to the August 26 Order, between August 29, 2024 and September 11, 2024, Pincus produced Shellpoint invoices to MJC. (ECF No. 62-1,

---

[2] Plaintiff commenced the underlying lawsuit in New York State Supreme Court, Nassau County, which was timely removed to this Court on July 20, 2023 on the basis of diversity jurisdiction. (*See* ECF No. 1 at ¶¶ 7-12.)

Nakamura Decl. at ¶ 8.) Following this production, MJC agreed to participate in a Settlement Conference before the undersigned on December 6, 2024 after believing that Pincus has produced all documents in accordance with the August 26 Order. (*See id.* at ¶¶ 9-10.)

On March 27, 2025, counsel for Pincus produced approximately 12,200 pages of non-searchable documents in .pdf format—95% of which, according to MJC, were "completely irrelevant" and/or non-responsive to MJC's post-deposition discovery requests served on February 25, 2025. (*Id.* at ¶ 26.) The next day, MJC filed a second motion to compel, this time requesting Plaintiff produce certain electronically stored information ("ESI") in response to MJC's post-discovery requests and order Plaintiff to either reproduce its recent voluminous "document dump"[3] in a searchable format and without purportedly irrelevant documents or pay Defendant's legal fees for the time required to review these documents. (ECF No. 47; *see* ECF No. 62-1, Nakamura Decl. at ¶ 28.)

The Court granted MJC's motion to compel on April 9, 2025. *See Pincus Law Group, PLLC v. MJ Connections, Inc.*, No. 23-CV-05528 (SJB) (JMW), 2025 WL 1070384, at *4 (E.D.N.Y. Apr. 9, 2025) ("April 9 Order"). In doing so, the Court first determined that ESI relating to the requests were relevant and proportional considering Plaintiff's compliance with the requests are "necessary for an accurate calculation of what damages MJC is owed." *Id.* at *2. In addition, with respect to the reproduction request, the Court held that Defendant could seek reproduction of the documents pursuant to the parties' ESI Stipulation, and that a majority of the documents sent in the so-called "document dump" had "minimal, if any, relevant value." *Id.* at *3-4. Accordingly, Plaintiff was directed to produce the ESI pertaining to the discovery requests

---

[3] Pincus produced an additional 10,300 "irrelevant" documents on April 2, 2025 which MJC characterizes as "a continuation of [Pincus'] document dump"—in non-searchable format. (ECF No. 62-1, Nakamura Decl. at ¶¶ 27, 30-31.)

and to reproduce relevant documents in a searchable format on or before April 18, 2025. *Id.* at *4. The end of all discovery, therefore, was "extended for the sole purpose of complying with this Court's Order." *Id.* On April 18, 2025, Pincus reproduced documents in response to the Court's April 9 Order—a production that consisted of only 601 pages of documents. (ECF No. 62-1, Nakamura Decl. at ¶ 33.)

b. *Pincus's 30(b)(6) Deposition*

On February 21, 2025, MJC served its 30(b)(6) Notice of Deposition to counsel for Pincus. (ECF No. 62-1, Nakamura Decl. at ¶ 42.) On March 27, 2025, MJC re-served Pincus with its Rue 30(b)(6) Notice of Deposition ("30(b)(6) Notice") reflecting only a change in the deposition date which was rescheduled to April 4, 2025. (*Id.* at ¶ 43.) On April 3, 2025, counsel for Pincus served objections to the Rule 30(b)(6) Notice. (*Id.* at ¶ 45.) On April 4, 2025, MJC took the deposition of Caryn Pincus—Pincus' Rule 30(b)(6) designated witness—who MJC claims was "unprepared" for the deposition. (*Id.* at ¶¶ 47-48.) The 30(b)(6) Notice included the following fourteen topics:

> **Topic 1**: General and specific details concerning Pincus's proposed Twelfth Affirmative Defense that "Defendant's Counterclaims are barred, in whole or in part, through the operation of fraud, mistake, or duress."
>
> **Topic 2**: General and specific details concerning the identification and substance of any documents concerning the proposed Twelfth Affirmative Defense
>
> **Topic 3**: General and specific details concerning Pincus Law's proposed Thirteenth Affirmative Defense that "Defendant's Counterclaims are barred, in whole or in part, by the doctrine of abandonment.
>
> **Topic 4**: General and specific details concerning the identification and substance of any documents concerning the proposed Thirteenth Affirmative Defense.
>
> **Topic 5**: General and specific details concerning Pincus Law's proposed Fourteenth Affirmative Defense that "Defendant's Counterclaims are barred, in whole or in part, because no contractual agreement exists between the parties

6

hereto, or in the alternative, any such agreement may be found void, voidable, or superseded by other contractual agreements."

**Topic 6**: General and specific details concerning the identification and substance of any documents concerning the proposed Fourteenth Affirmative Defense.

**Topic 7**: General and specific details concerning any purported ethical issues and/or concerns ("Ethical Issues") in connection with the parties' November 28, 2017 MJ Connections Limited Business Development Agreement (the "Agreement"), including any documents or correspondence (as well as drafts), notes, text messages, results of research, communications by and between Pincus Law employees and representatives (including emails or texts from Ms. Caryn Pincus to herself) concerning such Ethical Issues, together with the dates of such documents or correspondence.

**Topic 8**: General and specific details concerning any issues and/or concerns regarding the purported legality/illegality of the Agreement ("Legality Issues") in connection with the Agreement, including any documents or correspondence (as well as drafts), notes, text messages, results of research, communications by and between Pincus Law employees and representatives (including emails or texts from Ms. Caryn Pincus to herself) concerning such Legality Issues, together with the dates of such documents or correspondence.

**Topic 9**: General and specific details concerning the software systems utilized by Pincus Law including the software systems known as Perfect Practice, Black Knight and LPS (each a "Software System")

**Topic 10**: General and specific details concerning the collection and/or production of documents and information, including electronically stored information ("ESI"), in response to MJ Connections, Inc.'s discovery requests in this litigation, including any instructions or correspondence with respect to any limitations placed on the scope of ESI and other documents and information to be collected and/or produced.

**Topic 11**: General and specific details concerning the collection and/or production of documents and information, including ESI, in response to Judge Wicks' August 26, 2023 Memorandum Order [ECF No. 32], including any instructions or correspondence with respect to any limitations placed on the scope of ESI and other documents and information to be collected and/or produced

**Topic 12**: General and specific details concerning how and why specific States (NY, NJ, PA or FL) were redacted from the invoices produced by Pincus Law in this litigation and any instructions or correspondence concerning the redaction of such states.

**Topic 13**: General and specific details concerning Pincus Law's calculation of

7

amounts due and owing to MJ Connections, Inc. pursuant to the Agreement, the calculation of such amounts, including the documents or information relied on in making such calculations, and any instructions or correspondence concerning any limitations placed on what types of matters or billings should or should not be included in the calculation of amounts due and owing to MJ Connections, Inc.

**Topic 14**: General and specific details concerning Pincus Law's calculation of damages: a) of not less than $400,000 as alleged in paragraph 36 of Pincus Law's verified complaint [NYSCEF Doc. No. 2], including the documents or information relief upon in making this calculation and the period of time over which these damages were allegedly sustained; b) of approximately $800,000 dollars in annual business revenue as alleged in paragraph 65 of Pincus Law's First Amended Complaint [ECF No. 21], including the documents or information relief upon in making this calculation and the period of time over which these damages were allegedly sustained.

(ECF No. 62-20.)

MJC contends that Caryn's failure to answer particular questions or possess knowledge on certain topics demonstrates Pincus's failure to prepare Caryn to testify about the topics set forth in MJC's Rule 30(b)(6) notice. (ECF No. 62-1, Nakamura Decl. at ¶¶ 50-54.) This failure, according to MJC, amounted to a "willful and knowing violation" designed to "cause MJC to incur unnecessary legal fees," and to "allow [the parties] to maintain plausible deniability and avoid having to provide deposition testimony about sensitive deposition topics." (*Id.* at ¶ 55.)

c.   *MJC's Motion for Sanctions*

MJC filed the present motion on November 29, 2025 (ECF No. 62) seeking discovery sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(A) and (C), 37(b)(2) and 37(d), and the Court's inherent power for: (i) Pincus's violation of the August 26 Order; (ii) Pincus's document dump from March 27, 2025, consisting of over 22,500 pages of almost entirely irrelevant documents, and MJC's subsequent successful motion to compel arising therefrom; and (iii) Pincus's willful failure to produce a properly prepared 30(b)(6) witness during Pincus's April 4, 2025 deposition.

8

(ECF No. 62, ECF No. 62-1, Nakamura Decl. at ¶ 3.) With respect to fees and expenses sought, counsel for MJC seeks:

(i)      $28,138.44 (consisting of $22,905 in legal fees and $5,233.44 in expenses) in connection with Pincus's alleged violation of the Court's August 26 Order;

(ii)      $8,730 in connection with Pincus's document dump and MJC's April 2025 motion to compel; and

(iii)      $6,267.75 (consisting of $4,500 in legal fees and $1,767.75 in expenses) in connection with Pincus's failure to produce a prepared 30(b)(6) witness.

(*Id*. at ¶ 58.)

Pincus opposes by arguing that (i) MJC's motion is untimely, (ii) Pincus has not violated any Court order, and in any event, (iii) the record is devoid of any showing of bad faith to support an award of sanctions under Rule 37 or the Court's inherent power.[4] (*See* ECF Nos. 63, 64.) The parties appeared for oral argument on MJC's motion on February 2, 2026.

## **THE LEGAL FRAMEWORK**

### a. *Sanctions Under Federal Rule of Civil Procedure 37*

"Rule 37 gives a district court the authority to impose 'just' sanctions on a party who fails to comply with a discovery order." *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025) (quoting *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023)) (quoting Fed. R. Civ. P. 37(b)(2)(A)).With this discretion, the Court is granted a panoply of options once it is determined that discovery sanctions are warranted, including payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment on the other. *Zimmerman*, 150 F.4th at 146; *Booker v. Suffolk Cnty. Corr. Facility*, No. 14-CV-5204 (AMD)

---

[4] Pincus raised in its papers that MJC failed to comply with this Court's Individual Practice Rules which "expressly require[s] discovery motions to be made by letter motion, subject to a strict word count, and accompanied by a Local Civil Rule 37.3(a) Certification." (ECF No. 63 at p. 1, n.1) (referencing Wicks Indiv. Prac. R. 3(A) (Discovery and Other Non-Dispositive Motions)). Considering the record and scope of the issues raised, the Court excuses any excessiveness in the submissions.

(SJB), 2020 WL 1821903, at *4 (E.D.N.Y. Feb. 13, 2020), *report and recommendation adopted*, 2020 WL 1821348 (E.D.N.Y. Apr. 10, 2020).

"The two predicates to the imposition of sanctions under Rule 37(b) are (1) a 'court order directing compliance with discovery requests,'' and (2) "non-compliance with that order[.]''' *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 673 F. Supp. 3d 345, 356 (S.D.N.Y. 2023) (quoting *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15 Civ. 3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017)). For instance, pursuant to Rule 37(b)(2), if a party disobeys an order to provide discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(2)(C); *see Irish v. Tropical Emerald LLC*, No. 18-cv-82 (PKC) (SJB), 2022 WL 2716182, at *9 (E.D.N.Y. July 13, 2022) (referencing Rule 37(b)(2)). Similarly, Rule 37(a)(5) explicitly provides that if a motion to compel is granted, "the court must ... award reasonable motion expenses incurred in making the motion." *Quinio v. Aala*, No. 19-CV-4686 (PKC) (SJB), 2022 WL 21125, at *13 (E.D.N.Y. Jan 3, 2022) (concluding that an award of reasonable expenses is not appropriate where the movant filed the motion before a good faith meet and confer, the nondisclosure was "substantially justified," or "other circumstances make an award of expenses unjust." *Id.* (citing Fed. R. Civ. P. 37(a)(5)(A)(i)—(iii)).

Additionally, pursuant to Fed. R. Civ. P. 37(d), the court may order sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Under this provision, sanctions include "any of the orders listed in Rule

37(b)(2)(A)(i)-(vi)" in addition to "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(1)(3); *see Kerr v. American Airlines Inc.*, No. 15-CV-4850 (DLI) (SJB), 2018 WL 1747039, at *2 (E.D.N.Y. Apr. 11, 2018) ("In other words, where a party fails to appear for a deposition, the rule requires the Court to award reasonable expenses to the moving party absent substantial justification or other circumstances suggesting an award would be unjust.").

### b. *Sanctions Under the Court's Inherent Power*

"[T]he Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.")). "A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Id.* "When it comes to monetary sanctions [under the court's inherent power] . . . a court should sanction only 'bad faith, vexatious[ ], [or] wanton acts or actions otherwise undertaken for 'oppressive reasons.'" *International Technologies Marketing, Inc. v. Verint Systems, Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (quoting *Chambers*, 501 U.S. at 45-46); *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-cv-9612 (LJL), 2024 WL 3824394, at *12 (S.D.N.Y. Aug. 14, 2024) (noting courts utilize their inherent power and impose sanctions against a "party who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)).

Before imposing sanctions pursuant to the court's inherent authority, a court must find that the offending party's claims or actions were entirely without color and were brought in bad

faith, meaning motivated by improper purposes such as harassment and delay or for other improper purposes. *See Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curiam) (requiring "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." (cleaned up)); *see also Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 369 (E.D.N.Y. 2012) ("Similarly, an award of sanctions under the court's inherent power requires a defendant to present 'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes.'") (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)) (citations and internal quotation marks omitted). Further, the "award of sanctions under the court's inherent authority must be based on 'clear evidence' and must be accompanied by a 'high degree of specificity in the factual findings.'" *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 73 (E.D.N.Y. 2008) (quoting *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002)); *Wolters Kluwer Fin. Servs.*, 564 F.3d 110, 114 (2d Cir. 2009) ("Inherent power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes.").

Before sanctions are to be imposed "due process requires that the party to be sanctioned … 'receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.'" *Rothman v. Complete Packing & Shipping Supplies, Inc.*, No. 22-CV-2821 (OEM) (ST), 2024 WL 4350433, at *3 (E.D.N.Y. Sept. 30, 2024) (collecting cases).

"Bad faith" is a pre-condition for imposing sanctions under the Court's inherent power whereas "no bad faith showing is required" under Rule 37. *CSL Silicones Inc. v. Midsun Group Inc.*, No. 3:14-cv-01897 (CSH), 2016 WL 3568173, at *5 (D. Conn. June 27, 2016) (quoting *Enmon Prospect Capital Corp.*, 675 F.3d 138 (2012)); *Underdog*, 273 F.R.D. at 378 ("Although bad faith is required before a court may exercise its inherent power to impose sanctions, Rule 37 contains no such requirement."). It follows, therefore, that "Rule 37 sanctions . . . may be imposed 'notwithstanding a lack of willfulness or bad faith . . . .'" *Richards v. Kallish*, No. 22-cv-9095 (CS) (VR), 2024 WL 180869, at *6, n.8 (S.D.N.Y. Jan. 17, 2024) (citation omitted).

This principle is illuminated in situations where courts decline to impose sanctions under the court's inherent power because a movant fails to meet the "appropriately high" standard for inherent power sanctions while finding that sanctions pursuant to Rule 37 are appropriate. *See, e.g., Beverly Hills Teddy Bear Co. v. Best Brands Consumer Products*, No. 1:19-cv-3766 (GHW), 2020 WL 7342724, at *17 (S.D.N.Y. Dec. 11, 2020) (finding that the "evasive and incomplete discovery responses and selected portions of [] deposition testimony" was "not clearly indicative" that the party engaged in "the kind of intentional deception required for the imposition of sanctions under the Court's inherent power," yet the "failure to comply with [] discovery obligations" justified an award of reasonable attorneys fees under Rule 37); *Automated Management Systems v. Rappaport Hertz Cherson Rosenthal, P.C.*, No. 16-CV-04762, 2021 WL 2983240, at *9-10 (S.D.N.Y. July 14, 2021) (granting an award of Rule 37 sanctions in the form of reasonable attorneys' fees considering "defendants failed to obey the court's order" but denying the application for sanctions under the court's inherent power due to the lack of "clear evidence" that the complained of actions were "undertaken for reasons of harassment or delay or for other improper purposes").

It is with these principles in mind that the Court considers the instant motion.

## **DISCUSSION**

A. *Timeliness of MJC's Motion for Sanctions*

Pincus contends MJC's motion should be denied because it "is the archetype of unreasonable delay" as MJC has offered "no excuse" for why its motion was filed more than one year after part of the alleged misconduct took place, seven months after the close of discovery, and several months after the motion for summary judgment was briefed. (ECF No. 63 at p. 5.) Moreover, Pincus avers MJC cannot demonstrate "good cause" to justify the delay. (*Id.* at p. 6.)

Different standards on timeliness apply to motions for sanctions under the Court's inherent power versus motions for sanctions under Rule 37. For example, "a motion for Rule 37 sanctions should be promptly made, thereby allowing the judge to rule on the matter when it is still fresh in his mind." *In re Terrorist Attacks on September 11, 2001*, 2018 WL 4096106, at *2 (S.D.N.Y. Aug. 27, 2018) (quoting *Mercy v. Suffolk County*, 748 F.2d 52, 55 (2d Cir. 1984)); *see Gutman v. Klein*, No. 03 CV 1570 (BMC) (RML), 2010 WL 4975554, at *3 (E.D.N.Y. Aug. 19, 2010) (quoting *In re Teligent, Inc.*, 358 B.R. 45, 49 (Bankr. S.D.N.Y. 2006) ("A party must bring discovery abuses to the Court's attention within a reasonable time."). The purpose is to allow the Court to meaningfully manage discovery and ongoing disputes as they arise, rather than let the disputes fester before the party later moves for sanctions.

"While Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y. 1999). Courts often find "unreasonable delay" under Rule 37 when the motion is brought several months after the conclusion of discovery or where the information arising to alleged sanctionable conduct was learned of before the motion

14

was brought. *See Carroll v. Trump*, 2024 WL 475140, at \*12 (S.D.N.Y. Feb. 7, 2024) (concluding the "motion for sanctions pertaining to a discovery issue that defendant sat on for about one year was 'untimely' under any construction of the term"); *see also Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 43-44 (S.D.N.Y. 2014) (finding a motion for discovery sanctions untimely due to the age of the matter, the delay in bringing the motion, and the fact that the information at issue was not newly discovered).

Indeed, the "key to the discretionary timeliness assessment of lower courts is how long after the close of discovery the relevant [Rule 37] motion has been made and whether it was made in accordance with Rule 37." *McEachron v. Glans*, No. 98-CV-17 (LEK/DRH), 1999 WL 33601543, at \*2 (N.D.N.Y June 8, 1999) (finding a motion for discovery sanctions made "within two weeks of the close of discovery" to be timely); *see Shamis*, 34 F. Supp. 2d at 886 (concluding the motion for discovery sanctions timely when brought less than two months after the close of all discovery). In addition "[w]here a party seeks to make a discovery motion after the close of discovery, that party must show good cause" for the delay. *Rodriguez v. Village of Port Chester*, 535 F. Supp. 3d 202, 217 (S.D.N.Y. 2021) (citing Fed. R. Civ. P. 37).

For example, in *Al-Sabah v. Agbodjogbe*, the court concluded that defendants' motion for sanctions under Rule 37 was untimely. No. ELH-17-730, 2019 WL 4447235, at \*4 (D. Md. Sept. 17, 2019). There, defendant moved for Rule 37 sanctions over one year after the close of discovery and "more than one month" after the deadline to file dispositive motions had passed. *See id.* In denying the motion for sanctions, the court determined that this lengthy delay by defendants was compounded by the fact that that "defendants gave no explanation for their tardiness" despite having "long known about" the conduct cited to in the motion for sanctions. *Id.* at \*5.

15

Conversely, in *Mendez v. Hobby Lobby Stores, Inc.*, the court held that plaintiff's motion for sanctions was timely as it was filed "a few weeks after discovery had closed and a few days before the dispositive motion deadline . . . ." No. 3:23-cv-00181-ART-CLB, 2025 WL 1951012, at *7 (D. Nev. July 15, 2025). Indeed, not only did plaintiff "explain[] why the motion was filed after the close of discovery," namely that the parties agreed to produce a 30(b)(6) deponent a few days after the close of discovery which supplied the grounds for bringing the motion for sanctions, but also plaintiff filed its motion just two weeks after the information amounting to sanctionable behavior was revealed. *See id.*

Here, MJC's motion for sanctions was brought on November 29, 2025, nearly eight months after the April 2025 discovery deadline. (*See* ECF No. 62-1, Nakamura Decl. at ¶¶ 28, 35.) Moreover, unlike the plaintiff in *Mendez*, MJC's motion was filed long after the circumstances arising to sanctionable conduct were revealed. Specifically, MJC's motion was made almost fifteen months after becoming aware of the conduct in alleged violation of the August 26 Order, eight months after Pincus's "document dump," and nearly seven months after the April 9 Order and 30(b)(6) deposition. (*See id.* at ¶¶ 7, 10, 26, 32, 34.) In addition, just as the movant in *Agbodjobe* filed its motion "more than one month" after the dispositive motion deadline, MJC's motion was filed almost eight months after the deadline for summary judgment motion practice (May 2, 2025), and almost four months after the cross-motions for summary judgment were fully briefed (July 18, 2025).

Notably, in contrast to plaintiff's explanation in *Mendez*, MJC failed to establish good cause for the delayed motion. MJC's motion papers are silent as to any explanation for the delay. Counsel for MJC conceded at oral argument that the latest date by which information underlying the sanctions motion was discovered was in April 2025. To explain why MJC did not make its

16

motion any time between April to November, counsel for MJC stated that MJC was engaging "in discovery" that "I suppose that [the motion] could have" been brought earlier. Because good cause for the delay has not been shown, the Court finds MJC's motion for discovery sanctions under Rule 37 untimely.

Unlike a motion for sanctions under Rule 37, a motion for sanctions under the court's inherent power is considered timely if it is filed before entry of the court's final order. *Peer v. Lewis*, 606 F.3d 1306, 1315 n.10 (11th Cir. 2010) (citing *Prosser v. Prosser*, 186 F.3d 403, 405–06 (3d Cir. 1999) (stating that where sanctionable conduct occurs and is discovered before final judgment, a motion for sanctions pursuant to the court's inherent power must be filed before entry of the court's final order)). Here, because no final order or judgment has been entered in this case, MJC's motion for sanctions under the Court's inherent power is timely.

Accordingly, having concluded that motion for sanctions under Rule 37 is untimely, the Court proceeds to determine whether sanctions under the Court's inherent power are warranted.

B. *Sanctions Under the Court's Inherent Power are not Appropriate*

To justify its position that inherent power sanctions are appropriate, MJC cites to Plaintiff's unexplained 22,500-page production of "irrelevant documents" as evidence of bad faith. (*See* ECF No. 62-1, Nakamura Decl. at ¶ 39; *see also* ECF No. 62-24 at pp. 11-12.) Specifically, according to MJC, "Pincus engaged in a 'document dump' to cause MJC to incur unnecessary legal fees in connection with its review of 22,500 pages of irrelevant documents" and Pincus intentionally withheld documents from prior productions. (ECF No. 62-24 at p. 12 ("Pincus's conduct evidences bad faith.")). In addition, MJC seeks sanctions under the Court's inherent power for "Pincus's violation of the August 26, 2024 [] Order" and failure to prepare its 30(b)(6) witness. (ECF No. 62-1, Nakamura Decl. at ¶¶ 22, 55.)

Absent from MJC's application, however, is "clear evidence" that Pincus's conduct was done "entirely without color" and taken "for reasons of harassment or delay or for other improper purposes." For instance, though MJC contends that Pincus acted with "ill motive" in violating the August 26 Order by leading MJC on in prospects of settlement all to no avail (ECF No. 62-1, Nakamura Decl. at ¶ 21), MJC neglects to provide more than conclusory assertions, let alone "clear evidence," that Pincus's engagement in the Settlement Conference was done for purposes of harassment or delay as opposed to being motivated by a desire to amicably resolve this case.

Moreover, with respect to the so-called "document dump," Pincus explains that it produced large amounts of documents so to ensure it was providing MJC counsel with "a supplemental document production containing potentially responsive documents to ensure the completeness of its document production." (ECF No. 64, Nguyen Decl. at ¶ 15.) Pincus eventually remediated this allegedly inappropriate "document dump" through its supplemental production on April 18, 2025 in accordance with the April 9 Order which, as counsel for MJC conceded during oral argument, amounted to a complete production with nothing outstanding.

Lastly, the 30(b)(6) deposition of Caryn did not involve any bad faith conduct, let alone suggest "clear evidence" of such or that she was produced as a witness for reasons of harassment or delay. To support its argument that Caryn was "unprepared," counsel for MJC states that she did not review documents beforehand, that she was unaware of the existence of pleadings like Pincus's Amended Answer, and that on numerous occasions Caryn testified that she "didn't recall" certain information. (ECF No. 62-1, Nakamura Decl. at ¶¶ 49-50.)  Indeed, MJC directed the Court during oral argument to a segment of Caryn's deposition transcript wherein Caryn

18

admits that she prepared for her deposition only by "review[ing]" the 30(b)(6) Notice itself. (ECF No. 62-6, Pincus Dep. Tr. at 35:3-25; 36:2-3.)

While true, the remainder of Caryn's testimony demonstrates that she was prepared for and answered relevant questions regarding the litigation. During her deposition, Caryn testified about whether Defendant's Counterclaims are barred through fraud, mistake, or duress, whether the doctrine of abandonment bars the Counterclaims, and whether any agreement between the parties may be found void by other contractual agreements. (*See* ECF No. 64-5, Pincus. Dep. Tr. at 29:3-22; 34:6-24; 37:2-23.) In addition, Caryn testified at length about the ethical concerns with the Agreement and any related documentation shedding light on potential ethical issues. (*See id.* at 16:11-22; 22:5-11; 26:6-24; 60:16-25.) Further, Caryn discussed Pincus's interaction and engagement with software systems like Perfect Practice and Black Knight. (*See id.* at 124:18-21; 150:3-25; 151:2-24; 152:6-17.) Moreover, Caryn established and discussed details concerning the collection of ESI in response to MJC's discovery requests in this case. (*See id.* at 98:14-25; 99:6-25; 100:13-24; 101:2-9.) Caryn also testified to the collection of documents and ESI in response to this Court's August 26 Order (*see id.* at 131:19) in addition to details concerning how certain information was redacted from invoices produced by Pincus. (*See id.* at 131:5-13.) MJC could not identify any specific topics that Caryn was unable to testify to and was unable to pinpoint any documents that Caryn should have relied upon to make her a more "prepared" witness.

Nor were Pincus's objections to MJC's 30(b)(6) deposition notice served the day before the deposition untimely under the Federal Rules. Indeed, courts nationwide find objections to 30(b)(6) notices untimely *only when* they are not served *prior* to the 30(b)(6) deposition. *See Karagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1296 (S.D. Fla. 2019) (concluding

objections to 30(b)(6) notice untimely when made during the deposition and "insufficient to give plaintiff notice of those objections"); *Southern California Edison Company v. Greenwich Ins. Co.*, No. 2:22-cv-05984-JFW-JC, 2023 WL 5508841, at \*7 (C.D. Cal. July 12, 2023) (finding objections to the Rule 30(b)(6) deposition notice were untimely "as they were made well after the depositions were properly noticed to occur"); *In re Air Crash Disaster at Detroit Metropolitan Airport on Aug. 16, 1987*, 130 F.R.D. 627, 631 (E.D. Mich. 1989) (determining that objections to the Rule 30(b)(6) notice were untimely because they were not made "prior to February 8, 1989 (the date set for the deposition)"). Upon receipt of Pincus's objections to the 30(b)(6) notice, counsel for MJC could have contacted the Court to apprise it of the circumstances, adjourn the deposition, seek an extension of the deadline to complete discovery, or move to compel a more prepared witness—all of which counsel for MJC did not do.

Counsel for Pincus conceded that Pincus has engaged in "foot-dragging" discovery practice throughout this case. "Foot dragging" standing alone, however is not tantamount to "bad faith" and, considering the circumstances presented, is insufficient to impose sanctions under the Court's inherent powers. Pincus and its counsel are forewarned however, that the denial of the motion in no way condones the irrefutably dilatory conduct displayed. Had the Rule 37 motion been timely filed, the result might well have been different.

## CONCLUSION

For the foregoing reasons, MJC's motion for sanctions under both Rule 37 and the Court's inherent power (ECF No. 62) is **DENIED**.

Dated: Central Islip, New York
February 6, 2026

S O  O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

20